# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 19, 1899.

DOUGLAS H. GORDON ET AL.
VS.
CECIL R. ATKINSON ET AL.

*Taylor & Keech* and *Foster & Foster* for plaintiffs.

*Daniel L. Brinton* for Economy Savings Bank.

STOCKBRIDGE, J.—

After this case had been argued at the March Term, and the opinion of the Court filed on the 29th of March, a motion was made by the plaintiff for a re-argument, which was granted by the Court, and the case has since been re-argued and re-submitted.

It is unnecessary at this time to consider the entire case, but being convinced in the original opinion filed March 29th, that the Court fell into certain errors, only so much will now be reviewed as seemed on more mature reflection to have been error in the original opinion. Thus it was there stated that the mortgage of the 30th July, 1897, from Cecil R. Atkinson to A. J. Steers was wholly fraudulent. This statement was undoubtedly too broad, since the fraud pertaining to the mortgage having been participated in by both mortgagor and mortgagee, they were parties in *pari delicto*, and as between them a Court of Equity would refuse to interfere, and the mortgage would be entirely enforceable by Steers, or any assignee of his, as against Atkinson, but a Court of Equity might and would interfere at the instance of the creditors of Cecil R. Atkinson, the mortgagor, when it would not extend relief to Cecil R. Atkinson himself.

This mortgage, fraudulent to the extent stated, was by Steers assigned to the Economy Savings Bank, and the important question is, whether an assignee of the mortgagee, who became such for value and without notice, is affected by the fraud attendant upon the making of the mortgage, or whether the rule in regard to a *bona fide* purchaser without notice can be successfully invoked in its favor.

In the original opinion the Court adopted the latter view, but this I am now satisfied was error, and for the following reasons:

Where the debt for which the mortgage is given as collateral is evidenced by a promissory note, or other paper negotiable in form, and the same is negotiated while under due, *bona fide*

and for value, the rule of law affecting negotiable instruments obtains, and the endorsee or assignee of such negotiable instrument, evidencing the debt, takes it freed from any equities which would attach to it as between the original parties, and the mortgage which is collateral with it, follows the note, and thus passes to the assignee of the debt, discharged from all equities so as to be enforcible by him. Where, however, as in the present case, the indebtedness from mortgagor to mortgagee is not evidenced by anything in the form of a negotiable instrument, but evidenced only by the mortgage itself, which is not a negotiable instrument, the mere fact of the recital of the indebtedness in the mortgage is not sufficient to give it the character of a negotiable instrument, and it becomes simply a chose in action, which being non-negotiable, necessarily passes to any assignee thereof, subject to all equities which might be urged against it in the hands of the original mortgagee. While this view has not been universally adopted, it is that which is recognized in this State, and was the principle underlying the decision in the Cumberland Coal and Iron Company against Parrish, 42 Md. 598, and recognized by the Supreme Court of the United States in Carpenter vs. Longan, 16 Wallace 271.

This case differs from the line of cases where the fraudulent grantee of land under a deed, or chattels under a bill of sale, executes a conveyance or mortgage of the property to a *bona fide* purchaser without notice, since in those cases, the property which passes by the deed or bill of sale or becomes limited by way of mortgage, is land or specific property, something more than a chose in action.

The principle involved may well be illustrated in this: Suppose that the original mortgage from Atkinson to Steers, instead of being fraudulent, had been valid for the full consideration therein expressed, $15,000, and in the same form in which it was executed, and that Steers had paid to Atkinson all but a $1,000 of the indebtedness, to secure which the mortgage was given, and had then, before maturity, transferred the mortgage either absolutely or as collateral for an actual cash consideration of $10,000, to the Economy Savings Bank, which had then attempted to foreclose.

It will not be contended seriously that an assignee of the mortgage under such circumstances could have required the payment of Mr. Atkinson, or held him for a larger amount than that actually due as between him and Steers. In other words, that the mortgage was non-negotiable, and passed subject to all the equities. And if this be true where the original mortgage was *bona fide*, it is evident that a mortgage which is fraudulent in its inception can occupy no better position than a valid mortgage would have done.

It is undoubtedly a hard case in which an innocent lender of money is required to suffer from the fraud of the borrower, but the rule of law seems clear and positive.

Counsel for the Economy Savings Bank have seemed to place some reliance upon the Act of Assembly of 1890, Chapter 364, as amended by Chapters 184 and 446 of 1896. These, however, are statutes which relate, and relate solely, to the insolvent laws of this State, and though it may be true, in fact, probably is true, that both Atkinson and Steers were insolvent, that this is not a proceeding under the insolvent law whereby the provisions of that Act can be invoked, any more than can the law of negotiable instruments.

For these reasons a decree will be signed setting aside the mortgage from Cecil R. Atkinson to A. J. Steers of the 30th of July, 1897, so far as creditors of said Atkinson are concerned, and appointing trustees to make sale of the property, to the end that it may be applied to the payment of the creditors of the said Cecil R. Atkinson.